29 C.C.P.A. (Patents)

## In re UBBELOHDE.

### Patent Appeal No. 4597.

Court of Customs and Patent Appeals.

May 4, 1942.

Clarence M. Fisher, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Primary Examiner rejecting claims 40 to 43, and 46 to 49, both inclusive, of appellant's application for a patent.

The grounds of rejection are hereinafter stated.

Two claims, nos. 33 and 35, have been allowed.

Claim 40 is illustrative of the subject matter involved in the rejected claims and reads as follows:

"40. In a method of producing a product of cellulose the improvement which comprises dissolving in an alkaline aqueous solution of a cellulosic compound a mixture of resin-forming substances, said mixture being partially condensed but soluble in the alkaline solution, regenerating the cellulose in a spinning operation, and further condensing the partially condensed resin-forming substance within the cellulose into a solid resin which is insoluble in the spinning solution."

The references cited are:

Bronnert, 1,374,718, April 12, 1921.
Speitel (French), 707,516, April 14, 1931.

Appellant's claimed invention here involved is described in the statement of the examiner as follows:

"The subject matter sought to be protected is a process for the production of filaments containing resins. A resin in its soluble state or a mixture of compounds capable of forming a resin is added to a viscose solution. The solution is then precipitated in the form of a thread which will contain a certain amount of the resin-forming materials. The thread is then treated to further condense the resin.

"According to the disclosure the resin-forming materials may be those which form a resin either by condensing or by polymerizing."

All of the claims were rejected as involving no invention over the prior art, and also as being drawn to species which appellant has elected not to claim in his application before us. Claims 42 and 43 were further rejected as alternative.

The patent to Bronnert discloses the adding of various condensation products of phenols and aldehydes, soluble in alkali, to a viscose solution, which is then spun

454

into threads and treated in an acid reacting bath having a temperature of 70° C.

The patent to Speitel discloses the adding of formaldehyde and phenols to a viscose solution prior to spinning. The patent states:

" * * * The formaldehyde may be incorporated either in the viscose solution or in the coagulation or precipitation bath or even in both at the same time.

\* \* \* \* \*

"However we can increase the doses of formaldehyde up to 10% and even higher which makes it possible, furthermore, to carry out the most divers condensations and to incorporate foreign substances in the viscose or in the coagulated or precipitated product. In this way we may use as suitable substances proteic materials of any origin (casein, glutin, fibroin, etc.) but likewise phenols, thiophenols, oxycarboxylic acids or any other material which, under operating conditions, can pass into the insoluble state or give rise to condensation products insoluble in water or at least only soluble with difficulty therein or in dilute sulfuric acid. These new compounds may of course be subjected to any subsequent treatments for the purpose of changing their nature or their properties, for example to tanning or to some other process. The additional substances mentioned above may, depending on their nature, be incorporated either in the viscose solution or in the coagulation bath.

"If we add to a viscose solution, for example, an aqueous solution of 10% casein (10% calculated on the basis of dissolved cellulose) and if we spin this mixture in a sulfuric acid which contains, for example, simultaneously 75% of monohydrate and for example 1.5% of formaldehyde or substances capable of forming or yielding, under the conditions prevailing during the operation, formaldehyde, we obtain, spinning for instance at 13° C. and maintaining a length of coagulation of 2m. for instance and a speed of winding of 80 meters per minute threads which, washed in water, desulfurized, bleached, have a silky appearance and feeling as well as a firmness under traction of 1.9 to 2.3 gr. per denier. These threads show an excellent affinity for basic and acid dyes, an affinity which approaches that of animal fibers."

The Primary Examiner rejected all of the claims as unpatentable over the patent

to Bronnert and also as unpatentable over Bronnert in view of the patent to Speitel. His statement on appeal contains the following:

"Claims 40–43 and 46–49 stand rejected as no invention over Bronnert in view of Speitel. The acid bath of Bronnert at 70° C. will further condense the resin of Bronnert to some extent and to carry this process still further and use an after treating process to further change the properties of the resin involves no invention in view of Speitel. It is believed that further condensing a partially condensed resin is the most obvious, if not the only way, of changing it. Whether the resin of Bronnert is hardened by condensation or polymerization is considered immaterial as far as the combination process is concerned."

He also rejected claims 41, 46, 47 and 48, upon the ground of being drawn to a species which appellant has elected not to claim in the instant application.

Claims 42 and 43 were rejected by the examiner as being alternative and indefinite.

With respect to claims 40 and 49 the examiner stated:

"Claims 40 and 49 are not generic to claims 33 and 35 (which have been allowed) and claims 46–48 because 40 and 49 call for the addition of a partially condensed resin which excludes claims 33 and 35."

The Board of Appeals held that claims 40 to 43, inclusive, and claims 46, 47 and 48 do not state any invention over the patent to Bronnert, and further held that none of the claims is patentable over the patent to Speitel, stating that "applicant has not modified the Speitel process in any degree not obvious to those skilled in the art."

The board also held that all of the claims are unpatentable on the ground that appellant has elected the species of the allowed claims, and that the rejected claims are of a different species than the allowed claims.

Upon the question of patentability of the involved claims over the prior art, appellant makes two principal contentions:

1. That all of the claims require the resinous starting material to be partially condensed or polymerized, and that such starting material is not disclosed in either of the references.

2. That the claims require that the resin forming mixture be further condensed in the formed product to a solid, insoluble state, and that this step is not shown in either of the references.

With respect to the first contention above stated, the patent to Bronnert states:

"A process for spinning very fine threads from viscose solutions has been proposed, in which spinning baths containing aldehyde bisulfites or the reduction products thereof, ketone bisulfites or soluble condensation products of phenols with aldehydes and sodium-sulfites are employed.

"Now it has been found that instead of adding these water soluble combinations to the spinning bath, it is preferable and more economical to add the various condensation products of phenols and aldehydes soluble in alkali, to the viscose itself, preferably prior to the ripening process, and to force the suitably ripened mixture into bisulfite baths for example.

"Example.

"10 kg. artificial resin produced from phenol and formaldehyde are dissolved in about 3.6 kg. caustic soda and 43 kg. water and then 1000 kg. freshly prepared raw viscose are added. * * *"

It will be noted that the patent refers to "condensation products" which are added to the viscose. As observed in the brief of the Solicitor for the Patent Office, the term "condensation products" soluble in alkali clearly means that "they must be at least partially condensed and, since they are soluble, the condensation must be only partial, * * *."

We think the Bronnert patent clearly refers to the resinous starting material as being partially condensed.

The patent to Speitel does not disclose a mixture of resin forming substances, partially condensed. This the Board of Appeals admitted, but with respect thereto stated as follows:

"Applicant objects to the disclosure of Speitel on the ground that Speitel does not add partial condensation products to the viscose but only substances which are capable of forming condensation products. It is clear from applicant's Example No. 1 that the use of partial condensation products is only a matter of choice and that when the process is broadly stated, it is, as to the feature of partial condensation products, substantially the same as the Speitel process. In any event, the addition of a partial condensation product to the viscose of Speitel would be obvious to those skilled in the art."

In the example given in appellant's application it is stated that the mixture of formaldehyde and phenol "*may* be partially condensed before addition to the spinning solution, * * *". (Italics ours.)

Appellant's application also states:

" * * * The partial condensation of the phenol-formaldehyde before its addition is not absolutely necessary but will reduce the time necessary for the condensation of an insoluble substance and the mixture partially condensed will form bigger molecules during and after the forming and the aftertreatment of the products. * * *"

We cannot say that the board erred in holding that the addition of a partial condensation product to the viscose of Speitel would be obvious to those skilled in the art and it may be observed that the patent to Bronnert does add a partial condensation product to the viscose.

■ We therefore must hold that appellant's first contention is without merit.

With respect to appellant's second contention, that appellant's second step of condensation of the resin-forming mixture forming a product that is solid and insoluble in the spinning solution is not disclosed by the references, we would observe that the examiner stated that the acid bath of Bronnert at 70° C. will further condense the resin to some extent.

However, we are unable to say that Bronnert suggests further condensation of his resin to a point where it becomes a solid, insoluble in the spinning mixture.

At this point we would note that appellant contends that the resins employed by Bronnert are soluble not only in the alkali solution, but also in the acid precipitation bath. We find nothing in that patent justifying such a holding.

The patent to Speitel states, as hereinbefore quoted, that his process results in condensation products that are insoluble in water, or at least only soluble with difficulty therein, or in dilute sulfuric acid. The patentee then adds that "These new compounds may of course be subjected to any subsequent treatments for the purpose of changing their nature or their proper-

456

ties, for example to tanning or to some other process."

The Board of Appeals, in affirming the rejection of the claims in view of the patent to Speitel, stated:

"There is also the objection that Speitel refers only generally to an after treatment. Applicant also refers in line 4, page 4 and line 5, page 5 of his specification to after treatment. He indicates that the hardening process is performed in the well known manner and we believe it to be obvious to any one skilled in the art that the Speitel product of lines 29 to 52, page 4, could be hardened and further condensed in the usual manner by heat. The temperatures employed by applicant are the usual ones employed in the art."

■ The question of what would be obvious to one skilled in the art before us involves the consideration of extremely tech-nical matters; under these circumstances we would not be warranted in reversing the Patent Office tribunals unless we believe that those tribunals are manifestly wrong. This we cannot do upon the record before us. See In re Wuertz et al., 110 F.2d 854, 27 C.C.P.A., Patents, 1039.

■ Therefore we find no error in the holding of the Board of Appeals that the claims are not patentable over the art cited.

In view of this conclusion, we find it unnecessary to consider other grounds of rejection of the claims by the examiner and the board.

The decision appealed from, affirming the decision of the examiner holding the claims unpatentable over the prior art, is affirmed.

Affirmed.